McKinney, J.,
delivered the opinion of the Court.
The questions in this cause arise upon the construction of certain clauses of the will of John Ellis, deceased. The third clause is as follows: “ I give unto my sons, William and John, as trustees, in trust for the use and benefit of my daughter, Nancy Fisher, one tract of land, where John Richardson lives, amounting to one hundred acres, * * * and one thousand dollars in money. The trustees aforesaid are to loan out said money at interest, on the best security, or vest it in some safe stock, yielding an annual or semiannual interest, and to collect and pay over, annually, the interest, to her separate use and benefit during, her natural life, unless her husband, James Fisher, should die or be divorced from her before her death; in that event, the principal may be paid over, if said trustees should deem it advisable; but if she should die before Fisher, and not be divorced, then said thousand dollars and interest shall pass to the heirs of her body, if any she leaves ; and if she leaves none, then it is to be divided among my own right heirs. The tract of land on which Richardson lives, is to vest in my said sons, William and John, their heirs, and assignees, forever, in trust, for the separate use and benefit of my said daughter during her natural life, and at her death, to the use of the heirs of her body, if any she have; and in default of heirs of her body, then to my own right heirs. During the intermarriage of my daughter Nancy and James Fisher, the exclusive control of the land shall be vested in said trustees; and they shall have full authority, either to put it into the possession *233 of my said daughter herself, or to rent it out to somebody else, and pay over to her the annual rents, as they may deem most for her advantage.” A codicil to the will reduces the pecuniary legacy from a thousand to five hundred dollars, and contains the following additional bequest: “ It is my will, that my daughter, Nancy Fisher, shall have the separate use and benefit of my black girl, Sarah, in the same way that I have given the land to her. The said Sarah is, therefore, willed to my sons,- John and William, as trustees, to do with said slave and her increase in the same way as already provided in my will they are to do with the land.”
Said Nancy Fisher died in March, 1850, leaving her husband, James Fisher, and three minor children, the issue of said marriage, surviving her.
This bill is brought by the surviving trustee, to have the land and slave sold for the benefit of the three children, heirs of the body of said Nancy Fisher, assuming that, on her death, the title to said land and slave vested in them absolutely, under the limitations of the will. The defendant, James Fisher, demurred to the bill, and the demurrer was allowed; the Chancellor being of opinion, that the trustees took the legal estate, in fee, in the tract of land, and the legal title to the slave, in trust, however, for the use of Nancy Fisher for life, and then in trust for her heirs, as a class, to take in succession from generation to generation; and that, by force of the rule in Shelly’s case, Nancy Fisher became vested with an equitable estate, in fee, in the land, and an absolute equitable title to the slave; and that, on her death, her *234 husband became entitled, by the curtesy, to a life estate in the land, and to the absolute ownership of the slave, by virtue of his marital rights. As to the pecuniary legacy of five hundred dollars, nothing was decreed, the husband asserting no claim thereto.
We do not concur in the view taken .of this case by the Chancellor. The trustees did not take an estate of inheritance in the land. Where real estate is devised to trustees and their heirs,. to the use of or in trust for another and his heirs, the question, whether the trustees do or do not take the legal estate, depends chiefly on the fact, whether the testator has imposed upon the trustees any trust or duty, the performance of which requires that the estate should be vested in them.
If so, an estate, co-extensive with the duties to be performed, will vest in the trustees; if not, the legal ownership will pass over to the beneficial devisee.
The established doctrine is, that trustees take exactly that quantity of interest which the purposes of the trust require. The question is not, whether the testator has used words of limitation, or expressions adequate to carry an estate of inheritance; but whether the exigencies of the trust demand the fee simple, or can be satisfied by any, and what less estate? And, therefore, a devise to trustees may be either restricted or extended, as the nature and purposes of the trust require. Although the devise be expressly to the trustees and their heirs, it is well settled, that, if the duties imposed on them, or the proposes of the trust, require only an estate pur autre vie, to be vested in them, their legal interest will be cut down to that *235 extent, notwithstanding the express limitation to them in fee. This construction has been held to prevail even in the case of a deed, by necessary implication, arising from the object of the trust, in connection with the nature of the subsequent limitations; and much more readily will it prevail in the case of a will. And, on the other hand, in the absence of any express limitation, sufficient to carry the legal inheritance, the estate of the trustees may be enlarged and extended into such an estate as the nature and purposes of the trust require. The construction, in this respect, is governed mainly by the intention of the testator, as gathered from the general scope of the will.
Where lands were devised to trustees and their heirs, in trust, to pay several legacies and annuities, and then to pay the surplus rents into the proper hands of a feme covert, and, after her death, to stand seized to the use of the heirs of her body, it was decreed, that the trustees took the legal estate during the life of the married woman; but that, after her death, it vested in the heirs of her body; and the decree was affirmed by the blouse of Lords, after consulting with the Judges.—3 Bro. P. C., 113; 1 Eq. Ca. Abr., 383. So, in the case of a devise to a trustee and his heirs, upon trust to pay and apply the rents for the benefit of a person for life, and after his decease, to hold the lands in trust for other persons — the direction to apply the rents being limited to the cestui que trust for life — the estate of the trustee was held to terminate at the death of the cestui que trust.—3 East., 533; 9 East., 1.
*236 These authorities establish, that in the case before us, the trustee took the legal estate only for the life of Nancy Fisher; the obvious intention and purpose of the trust being merely to protect the property against the mai’ital rights of the husband. Upon the death of Mrs. Fisher, the object of the trust was accomplished, and the absolute legal estate vested in the heirs of her body, under the limitation in the will.
In this view, the rule in Shelly’s case can have no application. That rule requires that the estate of the ancestor, and the limitation to the heirs, shall be of the same quality: that is, both legal, or both equitable.
But in the present case, Mrs. Fisher had only an equitable estate for life; and the legal estate of the trustees during her life, ceasing upon her death, the limitation to the heirs of her body was instantly executed in them! Consequently, they became vested with the legal estate, not as heirs, but as purchasers. —See Hill on Trustees, part 2, chapters 1 and 2; 2 Jarman on Wills, chapters 35, 36, 37. .
It follows, that the defendant, as husband of Nancy Fisher, takes no interest, either in the land, slave, or pecuniary legacy.
The decree will be reversed, the demurrer disallowed, and the cause will be remanded to the Chancery Court.