J. A. J. CRESSWELL *et al v.* ABRAM SMITH.

CHANCERY COURT. *Jurisdiction. Discovery.* Under Code, secs. 4283, 4284, the Chancery Court has jurisdiction upon bill filed by com-plainant, whose execution has been returned unsatisfied, to discover any specific property, and compel the judgment debtor to discover where the property is, and also to compel the defendant, by process of attachment for contempt, to deliver up the property to the satis-faction of complainant's judgment, and the bill may be filed against the debtor alone.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

Cresswell *et al. v.* Smith.

John Ruhm for complainant.

T. L. Dodd for defendant.

McFarland, J., delivered the opinion of the court.

The bill alleges that the complainants have obtained judgment in the Circuit Court of Davidson county, against the defendants, Abram Smith and others, for $4416.14 and costs, upon which execution has issued and returned *nulla bona,* and that a few days before the filing of the bill an *alias* execution had issued, and was then in the hands of the sheriff, who had examined into the financial condition of Smith and his co-defendants in the judgment, and reports that he can find no property out of which to satisfy said *alias* execution; that said Smith is possessed of property but that he is concealing it, so that it cannot be reached. The bill proceeds: "Complainants are informed and believe, and so charge, that the said defendant, Abram Smith, is the owner and possessor of six one thousand dollar U. S. bonds and a gold watch; in fact, that in his return made a few days ago to the Davidson county tax collector, he reported the said six one thousand dollar bonds and the golden watch (valued at $150), as his property. They are further informed, and so charge, that defendant Smith is concealing the said bonds and watch, with the fraudulent purpose of hindering and delaying and defeating his creditors, and especially complainants, and for the especial purpose of preventing said property being levied on by the sheriff."

44—VOL. 8.

The bill then further charges that said Smith has deposited said bonds and watch with a person whose name is unknown to complainants, and who is aiding in concealing said property, that complainants have been unable to ascertain the name of the unknown person, but that he resides in Davidson county. The prayer of the bill is, that Smith and said "unknown person" be made defendants, the latter by publication, and that Smith be required to discover the name of the unknown person, and also, where said six bonds and watch are concealed or with ·with whom they are deposited, and whether they have been disposed of, and also what stock, choses in action, or property of whatsoever nature, he is possessed of, and where it is. Discovery is also asked against the "unknown person." That defendants be enjoined from disposing of the property, and that they be compelled to deliver it up to the satisfaction of complainant's judgment, and for that purpose that a receiver be appointed.

An injunction was granted by the chancellor, but afterwards, upon consideration of the complainant's motion for a receiver, and the motion of the defendant, Smith, to dismiss the bill for want of equity upon its face, the latter motion was sustained, no person appearing in answer to the publication for the "unknown defendant," if indeed, any such publication was made —a matter which we regard as unimportant. We think it clear that so much of the bill as relates to the supposed "unknown ‹ defendant," is entirely without effect. The complainants evidently had no particular person in mind, they do not, in fact, profess to have

been informed that the bonds and watch were deposited with any particular person. The charge in the bill in this respect, is simply based upon the inference that as the property could not be found, it might have been deposited with some other person, but *who,* the complainants do not profess to have any information. The object of the bill seems, in this respect, rather to discover from Smith some unknown person with whom the property had been deposited, for the purpose of making such unknown person a defendant by some subsequent proceeding, but it is clear that no one but Smith, is thus far, a party to the bill. Unknown persons having an interest in property the subject-matter of litigation of which the court has no jurisdiction, may sometimes be made defendants. And so in other cases where particular persons or classes are had in view, though their names be unknown. The object of the bill, in this case, seems to have been to meet the objection in the mind of the chancellor, that such a bill cannot be maintained against the judgment debtor alone.

The bill must therefore be regarded as filed against the defendant Smith alone, and the question is, can it, in this view, be maintained? The question is a new one in this State, so far as I know, and merits, as I think, a very careful consideration. It will be observed that it is not a bill for the purpose merely of compelling the defendant to discover generally whether he owns property, money or effects for the payment of his debts in the nature of a "fishing bill." It is true that there is a prayer that the defendant be re-

quired to discover whether he owns any property, stocks, or choses in action of any character; but the stating part of the bill points out specifically the property about which the discovery is specially sought, and states circumstantially the information upon which it is charged, that the defendant owns the property. If the right to discovery and relief to this particular property can be maintained, then that the prayer of the bill is too broad would not be material—we think the prayer is too broad, but that part should be rejected. The case then, is, in short, this: A judgment creditor, with an execution returned *nulla bona*, and with an *alias* execution in the hands of the sheriff, files his bill against the judgment debtor *alone*, alleging upon circumstantial information that the debtor is the owner of specific articles of personal property which would be subject to the execution if found; but which, from their nature, are susceptible of being secreted or concealed, either upon the debtor's person or otherwise, and charging further, that the debtor is, in fact, fraudulently concealing said articles of property for the purpose of preventing their being taken by the execution. The bill praying that the debtor be compelled to discover where the articles are concealed, and also compelled, by process of attachment for contempt, to deliver up the property, to be subjected to the satisfaction of the complainant's judgment. And the question is, whether a court of chancery has jurisdiction to sustain such a bill? The opinion of Judge Cooper, as chancellor, is reported in 2 Tennessee Chancery Reports, p. 416. It shows that it was formerly a

contested question, both in England and the United States, whether a court of chancery had, independent of statutory provisions upon the subject, jurisdiction to aid a judgment creditor to reach stocks or choses in action of the debtor in the hands of a third person, where there was no elements of trusts or fraud involved. This court, in the case of *Erwin* v. *Oldham,* 6 Yerg., 185, took sides with those courts that denied the jurisdiction, and this decision has never been overruled. The effort in this case was to reach stock owned by the judgment debtor in a bridge company, and it was held that the court had no jurisdiction to grant the relief. The case arises previous to the act of 1832. The opinion of Judge Cooper reaches the further conclusion that the chancery court had no inherent jurisdiction to aid a judgment creditor to reach personal chattels in the hands of the debtor.

The reason for these decisions was, that the creditor's remedy was at law, that is to say, by process against the debtor's person, under which he might be imprisoned if the debt be not paid, or by proceedings in outlawry. These conclusions may be taken as correct, and furthermore, that the mere abolishment of imprisonment for debt would not, without more, vest the chancery court with jurisdiction it did not previously possess, however much the creditor might need additional aid. But it was readily seen that the creditor would need additional remedies, and as the right to imprison the debtor was taken away, other remedies in favor of the creditor were generally substituted,

and for this purpose our act of October 18, 1832 (Code, secs. 4283, 4284), was passed.

It was produced, as we are informed, in a note to *Ewing* v. *Cantrell,* Meigs Rep., 377, by the case of *Erwin* v. *Oldham,* 6 Yerg., 185, before refered to, which although not finally decided until after the act was passed, had been argued previously, and the decision of the chancellor and the opinion intimated by the Supreme Court upon the argument.

The decision of *Erwin* v. *Oldham* was made, and the act in question passed after the right of imprisonment for debt had been greatly restricted, but before it was finally abolished. The first and second sections of the act are as follows, so of the Code, sec. 4283: "The creditor, where execution has been returned unsatisfied in whole or in part, may file a bill in chancery against the defendant, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered." Sec. 4284, "The court has power to compel the discovery and to prevent the transfer or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant's possession, or with the title vested in him, be levied upon by execution or not." The other sections, are not for the present, material. The

question is whether the jurisdiction of the court was by this act extended far enough to embrace the relief prayed for in this case. It seems to be assumed that the act does not authorize a bill against the debtor *alone.* The language is: "May file a bill against the defendant and any other person or corporation." I should take it to be very clear that if the nature of the remedy given, and the relief to be granted, as gathered from the balance of the act, indicates that the relief might be had against the defendant alone, then there is nothing in the language quoted making it essential that some other person or corporation should be made a defendant. The right to file a bill against the defendant and another, would include the right to file a bill against the defendant alone, if the remedy given may be thus embraced. It is argued, however, that the remedy given is to reach stocks, choses in action or other property due to or held in trust for the debtor, and therefore, of necessity, such stocks, choses in action or property, must either be due to the defendant *from* some other person or corporation, or held in trust for him *by* some other person, and that the act does not contemplate reaching property in the hands of the debtor himself. The language is, "to compel the discovery of *any property*, including stocks, choses in action, or money due to such defendants, or held in trust for him," etc.

The first clause, "to compel the discovery of any property," is broad enough to cover all property of any character, and the additional language—"including stocks, choses of action or money due to such defend-

ant, or held in trust for him," does not limit the general language "any property" to the character of property or rights set out. It only shows that the general terms, "any property," shall include everything that the term implies, and besides, shall specially include what might otherwise not be strictly regarded as coming under the head property—that is to say, stocks, choses in action or money due to the defendant, or held in trust for him. This is further shown by the concluding clause of the second section, to the effect that the court may subject the "property" to the satisfaction of complainant's judgment, "whether such property could, if in the defendant's possession, or with the title vested in him be levied on by execution or not." That is to say, the property may be reached, although a mere personal chattel subject to execution if in the defendant's possession, and also, if not subject to execution, such as stocks, choses in action or money due to or held in trust for the defendant.

In fact, I take it that it cannot well be doubted, that mere personal chattels subject to execution may be reached in this mode, *if in the hands* of some other person or corporation, than the debtor, and the court would have the power to compel the discovery and order the delivery of specific chattels, to be applied to the satisfaction of complainant's judgment—and to enforce the order by process of attachment for contempt. It is true the aid of the court to reach personal chattels, is not generally needed—they are usually not capable of being concealed, and all fraudulent transfers being void, may be levied on whenever found. The

Cresswell *et al. v.* Smith.

principal object of the statute was to reach choses in action, stocks or money due the defendant which could not be otherwise included. But personal chattels may be concealed, and since the abolishment of imprisonment for debt, the creditor may be successfully baffled while the debtor has personal effects amply sufficient to pay his debt. If the Legislature meant to provide an adequate remedy in the place of the one abolished —that is, imprisonment—they could not certainly have neglected to provide some remedy to enable the creditor to discover personal effects which have been fraudulently concealed, and as the language of the statute is broad enough to embrace this meaning, I see no reason to limit it. I conclude, therefore, that the bill may be maintained to reach mere personal chattels that have been fraudulently concealed. Then why should the remedy be confined to cases where the chattels are in the hands of some other person or corporation than the debtor. If the remedy may be had against the debtor and another, why not against the debtor alone? The language of the statute does not in terms deny the remedy against the debtor alone. Is there anything in the nature of the relief to be granted that would prevent its being applied alone against the debtor? I grant that unless the remedy can be made effectual by compelling the surrender of the property, then the jurisdiction ought not to be assumed. Is it an unauthorized "inquisition" to compel the defendant to discover where he has secreted his personal chattels which are liable to his debts, when the allegation is properly made upon sufficient ground as to the existence of such property?

I suppose, beyond doubt, that the defendant could be compelled to answer if the allegation is that the property is in the hands of some person who is also made a defendant. Why is it any more a violation of his personal privilege to compel him to answer whether he has the property himself or not? He may answer that the property is in the hands of some third person who is not a defendant, and the creditor would then have a remedy against such person. Suppose the bill is filed against the debtor and another, and the property charged to be in the hands of the latter. They can both be compelled to discover the truth, and if the property be in the hands of such third person, he may be compelled to surrender up the specific articles to the end that they be applied to complainant's judgment; such third person cannot escape by allowing a *pro confesso* and a decree for complainants debt against him, for he may be insolvent. But if he admit he has the specific articles of property, he may be ordered to surrender them, and compelled to obey the order at the peril of imprisonment for contempt. Now if such third person may be compelled to discover and surrender up the property, why may not the debtor himself? Why is it any more an " unauthorized inquisition" into the private affairs of the defendant in the one case, than the other? And why is it any more an unauthorized interference with the personal liberty of the debtor to compel him to obey the order of the court, by surrendering up his property for the payment of his debts, than it would be in regard to third person?

Has the enforcement of such remedies any resemblance to imprisonment for debt, which by our last Constitution is prohibited? Under the old writ of *capias ad satisfaciendum,* the debtor might be seized and imprisoned without regard to his means of paying the debt. The law was modified so as to allow him to obtain his discharge by surrendering up his property and showing his inability to pay more, but still an unfortunate man, entirely without money or means of paying his debts, might be, at least for a time, imprisoned. But in a case like this, there is no necessity for imprisonment any more than in any other case where there is willful and contemptuous disobedience of the lawful orders of the court. The property ought to be reached, or part of it at least, if really owned by the defendant and is lawfully subject to the payment of his debts. The defendant is, in the first instance, only required to answer as to his ownership of certain property which is specially indicated in the bill, and as to its location, If he admits that he owns the property, and it is in his possession or under his control, he is ordered to surrender it for the payment of his debts. This is precisely what the law and common honesty requires him to do. If he obey these orders the court will have no power to imprison him. If he refuse to obey, the court may imprison him, not because he is unfortunately unable to pay his debts, but because he wilfully refuses to obey the lawful orders of the court. In all other cases, when the court, in the exercise of rightful jurisdiction, orders specific things to be done, such as the execution of a

deed, or the surrender of property by a trustee, etc., the order may be enforced by imprisonment, and such imprisonment is not imprisonment for debt.

It is no greater hardship to compel a defendant to surrender to the payment of his debts valuable chattels which he may have concealed than it is for the poor man, whose property cannot be concealed, to be compelled to submit to its seizure by the sheriff. I admit that however just such a remedy may be, still, unless the statute has given the court the jurisdiction, it cannot be exercised, but my purpose is to show that there is nothing so extraordinary or unreasonable in such a course as to induce the court, by construction, to exclude it from the language of this statute, when a fair construction will justify the court in holding that the remedy is given—when in fact, it is almost within the letter of the statute.

The statute of New York is not in the identical language of ours, but it is substantially the same, and in fact, it is supposed that ours was copied from the New York statute. It is held in that State that such a bill as this can be maintained, in fact, they go further, and hold that it authorizes discovery without any allegation as to the existence of particular property: *Corning* v. *White*, 2 Paige, 567; 11 Paige, 495, and such is also said to be the practice under a similar statute in Michigan: See Judge Cooper's opinion, 2 Tenn. Ch., p. 425.

How far other statutes or rules of practice have contributed to these holdings, I am not aware. I however see nothing in principle or authority against

maintaining the jurisdiction claimed, except the fact that since the passage of the act, now nearly fifty years, although bills under it are of almost daily occurrence, the relief in this particular form seems not to have been sought—at least in any reported case. This may be regarded as evidence of the construction given to the act by the profession, which is sometimes entitled to great weight. But on the other hand it does not appear from any reported case, that the court ever refused to entertain such a bill. It may be taken that cases like the present have not often occurred. It is only at a comparatively recent period that the issuance of such a large number of government and corporation bonds and other securities, of a like character, has offered the opportunity for the investment in this mode of such large sums of money, and given to the fraudulent debtor an opportunity in this particular manner to baffle his creditor.

I cannot see that the doctrine maintained can amount to such a radical change in the law as previously understood, as to work surprise or injustice to any one. It can only affect the debtor, who may be in this mode fraudulently avoiding the payment of his just debts. It cannot do him any injustice. He cannot be compelled under such a bill, to do anything which in justice and right, he ought not to do.

If such a remedy produce any practical result—which in most cases it probably would not—it will be in the furtherance of right and justice, and give to the creditor a remedy which he ought to have. Our laws do not oppress the unfortunate debtor, exemptions

Cresswell *et al. v* Smith.

and other indulgences in his favor are liberal; and I think laws which compel him to do what in justice and right he ought to do, without compulsion, should be enforced. We confine our decision to the case presented, and we are not to be understood as intimating that a bill might or might not be maintained to compel a defendant to discover whether he has money to pay his debt. We express no opinion as to whether a watch may be taken in execution, or comes under the head of personal apparel.

The decree will be reversed with costs, and the cause remanded.