**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

$148,840.00 IN UNITED STATES
CURRENCY,

      Defendant,

DAVID D. AUSTIN,

      Claimant-Appellant.

No. 07-2142

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CV-05-1263-MV/DJS)**

Michael McCabe (Richard M. Barnett, with him on the briefs), San Diego,
California, for Claimant-Appellant.

Stephen R. Kotz, Assistant United States Attorney (Larry Gomez, Acting United
States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-
Appellee.

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

**LUCERO**, Circuit Judge.

In this civil in rem action, the United States seeks the forfeiture of $148,840 in United States currency discovered in the trunk of a rental car driven by claimant David Austin after Austin was stopped by police for speeding. The government commenced the action under 21 U.S.C. § 881(a)(6), which authorizes the forfeiture of currency: (1) furnished or intended to be furnished in exchange for a controlled substance, (2) traceable to a controlled substance exchange, or (3) used or intended to be used to facilitate a violation of the Controlled Substances Act ("CSA"). Following a motion for summary judgment by the government, the district court concluded that Austin lacked constitutional standing to challenge the forfeiture. On appeal, we are faced with the sole question of whether a claimant, such as Austin, who has made an unequivocal claim of ownership to currency potentially forfeitable to the United States, and who is found in the exclusive possession and control of that currency, has Article III standing to challenge the forfeiture action. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that Austin has advanced sufficient jurisdictional facts to support his constitutional standing. We thus **REVERSE** and **REMAND** for further proceedings.

**I**

**A**

At approximately 10:30 a.m. on June 25, 2005, Bernalillo County Deputy Sheriff Peter Roth stopped Austin for traveling 65 miles per hour in a 45-miles-

per-hour construction zone on westbound Interstate 40 near Albuquerque, New Mexico. At Roth's request, Austin produced a driver's license issued by the State of California and a rental contract in Austin's name from a Hertz Rent-A-Car location in Port Newark, New Jersey. Because the documents originated from divergent coasts and places far from Albuquerque, Roth inquired about Austin's travel itinerary. Austin told him that he had flown from California to Philadelphia the day before to visit a friend and that he was now on his way back to California. He also stated that he had driven from Philadelphia to Illinois to visit another friend and that because he was already halfway to California after that visit, he decided to drive the rest of the way home. Finding this explanation suspicious, Roth returned to his patrol car to perform a warrants check on Austin as well as a vehicle check on Austin's rental car to determine whether it was stolen. After both checks came back negative, Roth prepared a traffic citation for speeding and a preprinted consent to search form.

When he returned to Austin's vehicle, the deputy showed Austin the citation, and Austin agreed to pay the associated fine. Roth then gave Austin a copy of the citation and returned Austin's documents. As both he and Austin prepared to leave, however, Roth stopped and asked Austin if he could again speak with him. Austin responded in the affirmative and Roth inquired whether Austin had any illegal contraband or large sums of money in the vehicle. Austin stated that there were no such items, at which point Roth asked Austin whether he

-3-

would be willing to consent to a search of the vehicle. Austin replied that he would not consent. Roth then advised Austin to remain on the scene while he summoned an officer with a drug-sniffing canine.

As Austin and Roth waited for the canine team to arrive, Roth asked Austin about his travel plans again. Austin told the officer that he had traveled to Philadelphia to visit a friend named Lenny with whom he used to play pool in California, but that he did not know Lenny's last name. When asked about his employment, Austin stated that he had recently started a kitchen refurbishing business, and offered to refurbish the deputy's kitchen for approximately $300. Together, these statements made Roth subjectively suspicious that Austin was engaged in some type of illegal activity.

Officer Arcenio Chavez soon arrived with a drug-sniffing canine, and asked Austin for permission to have the dog inspect the interior and exterior of the rental vehicle. Austin agreed and unlocked the trunk for the officers. Chavez then escorted the dog around the exterior of Austin's rental car. When the dog approached the rear of the car, it jumped into the open trunk. Once inside the trunk, the dog alerted to the odor of a controlled substance within the trunk area and then attempted to open a cooler in the trunk with her nose.[1]

---

[1] According to Chavez, the dog began to increase her respiration and change her body posture, which indicated that she was alerting to the odor of a controlled substance. Additionally, although the dog's attempt to open the cooler with her nose was not part of her specific training, this reaction also purportedly
(continued...)

-4-

Upon observing the dog alert, the officers asked Austin to remove the cooler as well as an adjacent hard-sided suitcase. Austin complied, setting the items down on the pavement behind the vehicle. Chavez then redirected the dog toward these items and she again tried to open the cooler with her nose. She also bit into the suitcase and dragged it along the pavement area. At that point, the officers proceeded to search the suitcase and cooler. Although they found nothing of interest in the suitcase, Chavez noticed several plastic bags containing bundles wrapped in aluminum foil under the ice in the cooler. Roth removed the plastic bags and the aluminum foil covering, and discovered $148,840 in cold hard cash.

Suspecting that the currency was related to drug trafficking, Roth handcuffed Austin and read him his Miranda rights, but did not place him under arrest. He then proceeded to search the remainder of the vehicle, a venture which ultimately yielded no additional cash or contraband. When questioned by Roth about the origins of the currency, Austin refused to reveal the source of the cash, but told the deputy that the money belonged to him and said that he knew the amount of the money that had been discovered. Austin then refused to discuss the matter further without the advice of an attorney. Without any reason to continue

---

[1](...continued)
constituted an "alert" to the presence of a controlled substance.

detaining Austin, Roth took possession of the currency, handed Austin a receipt for it, and allowed him to continue on his travels.

**B**

On December 2, 2005, the United States filed a verified complaint in rem seeking the forfeiture of the $148,840 recovered from Austin's vehicle. The government alleged that the currency was subject to forfeiture under 21 U.S.C. § 881(a)(6) because the currency was furnished, or intended to be furnished, in exchange for a controlled substance, constituted proceeds traceable to such an exchange, or was otherwise used or intended to be used to facilitate a violation of the CSA.[2] Following the filing of the complaint, Austin submitted a verified claim opposing the forfeiture and an answer to the government's complaint, asserting that he was the owner of the currency.

The government thereafter deposed Austin on May 24, 2006. At that deposition, Austin repeatedly claimed that he was the owner of the currency seized, but in response to specific questions about the cash, he invoked his Fifth Amendment privilege against self-incrimination. Specifically, he refused to describe the source of the currency, explain why it was packaged in plastic and foil, or reveal why he was carrying such a large amount of cash. He also declined

---

[2] Although the government initially alleged that the currency was also forfeitable under 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C), it did not pursue forfeiture under either of those grounds in its motion for summary judgment. Adopting the government's lead, we refer to this case as arising only under 21 U.S.C. § 881(a)(6).

to answer, again on Fifth Amendment grounds, any questions relating to his sources of income, his employment history, his previous residences, and his travel itinerary in the days leading up to the traffic stop.

On September 28, 2006, the United States filed a "Motion to Dismiss/Strike Claim and Answer for Lack of Article III Standing or Motion for Summary Judgment." The government argued that Austin's claim was based solely on his "naked, unexplained possession" of the currency, and that he therefore lacked the requisite injury in fact that would allow him standing under Article III of the Constitution to challenge the forfeiture action. According to the government, because Austin had invoked the Fifth Amendment when prompted to explain his possession of the seized funds, he should be barred from contesting the forfeiture action on the ground that he failed to carry his burden of establishing constitutional standing. The district court agreed, and granted summary judgment in favor of the United States. United States v. $148,840.00 in U.S. Currency, 485 F. Supp. 2d 1254, 1259 (D.N.M. 2007). It concluded that Austin had not shown that he had Article III standing because he had failed to provide "any evidence in support of his claim of . . . an ownership interest in the currency." Id. This timely appeal followed.

## II

We review a district court's grant of summary judgment de novo, and apply the same legal standard as the district court. MediaNews Group, Inc. v.

-7-

McCarthey, 494 F.3d 1254, 1260 (10th Cir. 2007).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We consider the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party.  Jones v. Barnhart, 349 F.3d 1260, 1265 (10th Cir. 2003).  Accordingly, at this stage of the proceedings, we do not weigh the evidence or make credibility determinations, as it is not our office to do so; these are functions properly reserved for the ultimate finder of fact.  Id.

Whether a claimant has constitutional standing is a threshold jurisdictional question that we review de novo.[3]  See United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001).  As the party seeking to intervene in an in rem forfeiture action, a claimant bears the burden of establishing his own constitutional standing at all stages in the litigation.  See United States v. $38,000

---

[3] The sole issue before the court is whether Austin has Article III standing to challenge the forfeiture of the currency seized, as that was the only basis upon which the district court granted summary judgment to the United States.  See $148,840.00 in U.S. Currency, 485 F. Supp. 2d at 1259 n.4.  We do not address the separate question of whether Austin has "statutory standing" under Rule C(6) of the Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions.  See, e.g., United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 150 n.9 (3d Cir. 2003) (explaining that Article III standing depends on the existence of a case or controversy, while statutory standing requires compliance with certain procedural imperatives).

in U.S. Currency, 816 F.2d 1538, 1543-44 & n.12 (11th Cir. 1987); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At the pleading stage, a claimant satisfies this burden by alleging a sufficient interest in the seized property, such as an ownership interest, some type of lawful possessory interest, or a security interest. See, e.g., Rodriguez-Aguirre, 264 F.3d at 1204; United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 498-99 (6th Cir. 1998). In contrast, at the summary judgment stage, a claimant must prove by a preponderance of the evidence that he has a facially colorable interest in the res such that he would be injured if the property were forfeited to the United States; otherwise, no case or controversy exists capable of federal court adjudication. See Rodriguez-Aguirre, 264 F.3d at 1206; United States v. Cambio Exacto, S.A., 166 F.3d 522, 527-28 (2d Cir. 1999). Although a claimant must make an initial evidentiary showing of such an interest, a claimant need not definitively prove the existence of that interest. See Rodriguez-Aguirre, 264 F.3d at 1204; United States v. $577,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 79 (2d Cir. 2002) ("[T]he only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required 'facially colorable interest,' not whether he ultimately proves the existence of that interest." (quotations omitted)).

A claimant's decision to invoke the Fifth Amendment's protection against self-incrimination, as Austin did in this case, does not decrease his burden of

establishing standing at the summary judgment stage.  See United States v. Rylander, 460 U.S. 752, 761 (1983) ("[T]he claim of privilege is not a substitute for relevant evidence."); United States v. Certain Real Prop. & Premises, 55 F.3d 78, 83 (2d Cir. 1995) ("[T]he claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.").  In other words, "[a] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence."  United States v. Taylor, 975 F.2d 402, 404 (7th Cir. 1992); see also Rylander, 460 U.S. at 758; Mercado v. U.S. Customs Serv., 873 F.2d 641, 644 (2d Cir. 1989).

## A

At its essence, the government contends that in the absence of "some evidence and explanation of his interest in the res," Austin has failed to prove his Article III standing to challenge the forfeiture.  Stated more directly, the government argues that in determining standing, it is not enough for a claimant to say, "That money you took from me is mine."  A claimant must prove more, says the government, "or it is ours"—without having to establish any of its own rights to the asset.  According to this contention, Austin may not merely claim the property as his and couple his physical possession of the currency with that claim, he must also present additional evidence, such as an explanation of how he came into possession of the money, the nature of his relationship to it, or the story

-10-

behind his control of it. Without such evidence, goes the argument, Austin's claim amounts to nothing more than "naked, unexplained possession."

Austin counters that the cases invoked by the government do not support the conclusion that he lacks Article III standing. He urges that his categorical claim of personal <u>ownership</u> of the funds (as to opposed to a claim of possession on behalf of another), combined with the undisputed evidence that the money was in his possession and control when seized, are together sufficient evidence to establish his standing. As we view the matter, Austin has the better of the two arguments.

**B**

The fundamental flaw in the government's logic lies in its characterization of this forfeiture case as one of mere possession, rather than one of ownership. In the standing context, this distinction makes all the difference. As our sister circuits have recognized in other forfeiture cases, there is an important difference, for standing purposes, between one who claims to be the owner of property and one who claims to be a mere possessor of it. <u>Compare</u> <u>United States v. $38,570 in U.S. Currency</u>, 950 F.2d 1108, 1112-13 (5th Cir. 1992), <u>and</u> <u>United States v. $191,910.00 in U.S. Currency</u>, 16 F.3d 1051, 1057-58 (9th Cir. 1994), <u>superseded by statute on other grounds</u>, <u>with</u> <u>United States v. $321,470 in U.S. Currency</u>, 874 F.2d 298, 303 (5th Cir. 1989). The type of interest claimed dictates the type of evidence required to establish standing. <u>See</u> <u>$191,910.00 in U.S. Currency</u>, 16

-11-

F.3d at 1058. The case law in this area reveals the existence of at least three relevant property interests, and the nature of proof needed to demonstrate standing turns on which of these distinct interests has been claimed. These interests include: (1) ownership interests; (2) explained, lawful possessory interests (e.g., that of a bailee); and (3) unexplained or unlawful possessory interests. See id. at 1057-58.

In cases in which a person has asserted an ownership interest, our sister courts have not required the claimant to present the type of explanatory evidence urged by the government to establish his or her standing. See $38,570 in U.S. Currency, 950 F.2d at 1112; see also $191,910.00 in U.S. Currency, 16 F.3d at 1058 ("[A] simple claim of ownership will be sufficient to create standing to challenge a forfeiture."); cf. Rodriguez-Aguirre, 264 F.3d at 1206 (recognizing, in a Fed. R. Crim. P. 41(e) case, that "proof of ownership, as opposed to lawful possession, is . . . not required [to establish Article III standing] . . . even at a later stage in the proceedings such as a summary judgment or trial"). Rather, "courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." United States v. U.S. Currency, $81,000, etc., 189 F.3d 28, 35 (1st Cir. 1999). The required ownership interest can be demonstrated in a variety of ways, "including showings of actual possession, control, title and financial stake." United States v.

1998 BMW "I" Convertible, 235 F.3d 397, 399 (8th Cir. 2000) (quotation omitted).

The Fifth Circuit's decision in $38,570 in U.S. Currency is instructive. There, the court held that a claimant who asserted an ownership interest had constitutional standing to challenge the forfeiture of currency seized from a car that he was driving. Id. at 1113. Although the court stated that "a bare assertion of ownership in the res, without more, is inadequate to prove an ownership interest sufficient to establish standing," it also concluded that such an assertion, when coupled with evidence of the claimant's involvement with the res, is enough to confer Article III standing on the claimant. Id. at 1112; see also Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000) (recognizing that "an unsupported assertion is insufficient to establish standing" when the evidence adduced shows only a that a claimant "might have been involved" with the defendant res).

Similarly, in $191,910.00 in U.S. Currency, the Ninth Circuit concluded that a claimant who was found in possession of a large amount of currency, and who had asserted at least a partial ownership interest in the defendant res, had Article III standing to challenge the forfeiture. 16 F.3d at 1058. The court based its conclusion that the claimant had standing on the following reasoning:

> Here, [the claimant] clearly described the interest he asserted in the money—he claimed that he owned some of the money and that he was carrying the rest for a client. He did not disclaim knowledge of

the money he was carrying, and he did ask for a receipt from the police. His was certainly more than the kind of naked, unexplained claim of possessory interest held insufficient in Mercado. It was a repeated, colorable claim of possessory and ownership interests which, combined with the fact that the money was taken from Morgan's possession, was more than sufficient to support standing.

Id. at 1058; cf. $557,933.89, More or Less, 287 F.3d at 79 n.10 (finding standing because a claimant "submitted a verified claim that he was the owner of the funds"). Moreover, the Ninth Circuit held that, given the claimant's assertion of ownership, it was of no moment that he invoked his privilege against self-incrimination at his deposition when asked to explain his interest in detail. $191,910.00 in U.S. Currency, 16 F.3d at 1057, 1058 n.13. It was enough that he claimed to own the money taken from his possession. Id.

In contrast, where an individual claims only a possessory interest, the courts have required the claimant to provide evidence tending to support the legitimacy of the possessory interest alleged before the claimant will be held to have standing. See $321,470 in U.S. Currency, 874 F.2d at 303; Mercado, 873 F.2d at 645. Such evidence might include an explanation of the specific legal interest in the res (e.g., a bailment or agency interest) or an identification of its legal owner. See $321,470 in U.S. Currency, 874 F.2d at 304 ("No one can question the standing of a bailee or agent to attack a forfeiture of property subject to a lawful or even colorably lawful bailment or agency."); Mercado, 873 F.2d at 645 ("There must be some indication that the claimant is in fact a possessor, not a

-14-

simple, perhaps unknowing custodian . . . ."); $38,000 in U.S. Currency, 816 F.2d at 1544 (holding that a possessory interest was sufficient to confer standing when the claimant asserted that he held the money as a bailee).  This distinct evidentiary burden exists in possession cases because an individual who claims to merely possess property cannot be said to suffer a constitutional injury in fact if the property at issue is forfeited to the government unless that individual can evidence a legally cognizable possessory interest in the property.  See $321,470 in U.S. Currency, 874 F.2d at 303-04.

Thus, in $321,470 in U.S. Currency, the Fifth Circuit concluded that a claimant who "denie[d] legal ownership of [a] cash hoard" seized from a camper that he was towing lacked constitutional standing to challenge the forfeiture.  874 F.2d at 302-03.  Because the claimant was "either unable or . . . unwilling to provide any evidence supporting his assertion that he [had] a lawful possessory interest in the money seized," the court held that his claim amounted to "[u]nexplained naked possession of a cash hoard."  Id. at 304.  Such a claim was insufficient to confer standing, unless the claimant coupled his claim with evidence that he had a "lawful possessory interest."  Id.; see also $515,060.42 in U.S. Currency, 152 F.3d at 498 ("The assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's

-15-

control of the property."); <u>Mercado</u>, 873 F.2d at 645 (reasoning that an airline passenger who did not know that a bag seized from him contained money lacked standing to challenge its forfeiture); <u>United States v. $15,500 in U.S. Currency</u>, 558 F.2d 1359, 1361 (9th Cir. 1977).

Given that the root of the distinction recognized in these cases resides in Article III's clear requirement that an individual suffer a cognizable injury in fact before he or she can have constitutional standing, we find the reasoning of these cases persuasive. Moreover, our society is one that values both personal property rights and the appropriate judicial resolution of disputes involving those rights. As we view it, the government cannot prevent every person unwilling to completely explain his relationship to property that he claims to <u>own</u>, and that is found in his possession and control, from merely <u>contesting</u> a forfeiture of that property in court. It may well be that forfeiture ultimately will prove appropriate, but we find it obvious that such a claimant risks injury within the meaning of Article III and thus may have his day in court. We thus hold that when a claimant has asserted an ownership interest in the res at issue and has provided some evidence tending to support the existence of that ownership interest, the claimant has standing to challenge the forfeiture. In light of the foregoing, we turn to a consideration of whether Austin's unequivocal claim of ownership over the currency seized, coupled with the undisputed evidence that the money was taken

-16-

from his possession and control, are together sufficient to confer constitutional standing on this record.

C

Like the claimants in $38,570 in U.S. Currency and $191,910 in U.S. Currency, Austin has stated that he is the owner of the currency at issue. At his deposition, he repeatedly testified that the money was his. Additionally, the government does not dispute that Austin exercised some form of dominion and control over the money at the time the officers recovered it from his rental car. That he invoked the Fifth Amendment when asked to explain how he came into ownership changes neither of these two dispositive facts.

This would, of course, be a different case if the district court had exercised its discretion to strike Austin's claim of ownership to the currency in light of his repeated invocations of the Fifth Amendment privilege. It is well established that in a civil case a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause. See United States v. Parcels of Land, 903 F.2d 36, 43 (1st Cir. 1990); see also In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991). This doctrine exists to prevent a party from converting the Fifth Amendment privilege from its intended use as a shield against compulsory self-incrimination into an offensive sword. Rylander, 460 U.S. at 758. Notwithstanding these recognized principles, the government never

moved to strike Austin's deposition testimony, in which he asserted a claim of ownership, and the district court therefore considered that testimony as part of the record in ruling on the summary judgment motion.

Because the relevant testimony was not stricken—indeed was not even challenged by the government below—the district court was squarely presented with Austin's claim of ownership when it considered the standing issue. At the summary judgment stage, the court was required to view that testimony in the light most favorable to Austin, the non-moving party, and therefore was obliged to accept Austin's claim of ownership in determining whether Austin had met his burden of proving standing by a preponderance of the evidence. See 1998 BMW "I" Convertible, 235 F.3d at 400 (holding that where there were "disputed factual issues and witness credibility determinations to be resolved," summary judgment against a civil forfeiture claimant based on lack of standing was inappropriate). Thus, because Austin's assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that Austin was driving, we hold that Austin has established constitutional standing at this stage of the litigation.[4] He has both made a claim of ownership over the

---

[4] Our recent Order and Judgment in United States v. $290,000 in U.S. Currency, No. 06-3329, 2007 WL 2891070 (10th Cir. Oct. 3, 2007) (unpublished), is not to the contrary. The claimant in that case initially claimed an "ownership and/or possessory interest in" cash seized from a rental car she was driving. Id. at *1. At her deposition, however, she invoked the Fifth Amendment and refused to say "whether she was the owner of the money." Id. at *3. Absent any affirmative

(continued...)

-18-

currency and provided some evidence tending to substantiate that claim, as he had obvious possession and control over the currency when it was taken.[5]  See $38,570 in U.S. Currency, 950 F.2d at 1113; $191,910.00 in U.S. Currency, 16 F.3d at 1058.

We stress that our conclusion that Austin has constitutional standing to challenge the forfeiture at this point in the proceedings does no more than give him the right to contest that his property rights in the cash are properly subject to forfeiture.  As to the merits of Austin's asserted claim over the currency, we express no opinion.  Neither does his standing at this point in the proceedings mean the district court may not revisit the issue at later stages in the litigation.

### III

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment, and **REMAND** the case for further proceedings consistent with this opinion.

---

[4](...continued)
evidentiary assertion of ownership, the claimant's case was based merely on her naked possession of the currency at issue, which, standing alone, is insufficient to confer standing.  Id.

[5] Although not dispositive in light of his possession and control over the currency at issue, Austin has also advanced one additional fact tending to substantiate his ownership interest in the currency:  He was able to recite to the officers the amount of the currency at issue when the officers seized the money from his rental car.