NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0388n.06

Case No. 18-3701

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jul 30, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| $31,000.00 IN U.S. CURRENCY; $10,000.00 IN U.S. CURRENCY, | ) |  |
|  | ) |  |
| Defendants, | ) |  |
|  | ) |  |
| TAIWAN WIGGINS; DALANTE ALLISON, | ) |  |
|  | ) |  |
| Claimants-Appellants. | ) |  |

BEFORE: MOORE, COOK, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. What do shark fins, a moon rock, and twenty kegs of Coca-Cola have in common? The United States has sued them all. *See United States v. Forty Barrels & Twenty Kegs of Coca Cola*, 241 U.S. 265 (1916); *United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976 (9th Cir. 2008); *United States v. One Lucite Ball Containing Lunar Material (One Moon Rock)*, 252 F. Supp. 2d 1367 (S.D. Fla. 2003). Most people know that, in criminal cases, the government prosecutes a *person*. But there's another species of case—civil forfeitures—where the government prosecutes *property* instead. Here, the government initiated a civil forfeiture action against money it believes was connected to illicit drug trafficking. Taiwan

Wiggins and Dalante Allison filed claims to recover that money. Because the district court correctly found that Wiggins and Allison lack standing to contest the forfeiture, we affirm.

I.

Taiwan Wiggins and Dalante Allison entered the Cleveland Hopkins International Airport bound for sunny California. They never reached that destination. Instead, Drug Enforcement Administration agents searched their luggage and found $31,000 hidden in the lining of Wiggins's suitcase and $10,000 tucked away in a sock in Allison's carry-on bag. According to the government, Wiggins claimed the money belonged to his company, "Wiggins Cleaning," but he could only name a single client, "Mike & Mike." Yet the government could not locate any business filings for either "Wiggins Cleaning" or "Mike & Mike." R. 1, Pg. ID 5, ¶ 36. Similarly, Allison claimed he won his money gambling but could not name the casino or provide the date he won the money. Unpersuaded by their stories, the government suspected that the money came from drug trafficking.

When the government suspects that property has been used to further criminal activity, it may initiate a forfeiture action to seize that property. 21 U.S.C. § 881. Although some have doubted whether the modern practice can survive constitutional scrutiny, it nonetheless has historical origins. *See Leonard v. Texas*, 137 S. Ct. 847, 848–49 (2017) (Thomas, J.) (statement respecting the denial of certiorari); *see generally* Caleb Nelson, *The Constitutionality of Civil Forfeiture*, 125 Yale L.J. 2246 (2016). Early American statutes allowed the government to seize illegally carried goods—and even the ships that carried them—all "under the fiction that the thing itself . . . was guilty of the crime." *Leonard*, 137 S. Ct. at 849; *Austin v. United States*, 509 U.S. 602, 612–13, 615–17 (1993). Though some of the details have changed, the same basic structure exists today.

Because the government suspected that the seized cash was connected to drug trafficking, it initiated a forfeiture action. *See* 21 U.S.C. § 881(a)(6). Wiggins and Allison contested the forfeiture—each submitting verified claims that asserted an ownership interest in the property, signed under the penalty of perjury. *See* Fed. R. Civ. P. Supp. R. for Admiralty or Maritime Claims & Asset Forfeiture Actions G(5)(a)(i)(C). Their claims stated that, "as the person who is the sole and absolute owner, and who was in exclusive possession of these monies, I was victimized by an illegal arrest and I was victimized by the illegal seizure of the funds here involved." R. 6, Pg. ID 29; R. 7, Pg. ID 33. Initially, the district court found these "bald assertions" of ownership insufficient to give Wiggins and Allison standing to contest the forfeiture. R. 16, Pg. ID 74–76. But this court reversed, holding that "a verified claim of ownership" was enough to show standing at the motion-to-dismiss stage. *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 351 (6th Cir. 2017). However, we encouraged the government "to draft useful interrogatories that will either confirm [Wiggins's and Allison's] interest[s] in the [cash] or expose the futility of the claim[s]." *Id.* at 354–55.

The government did so, but Wiggins and Allison proved less than cooperative. When the government served interrogatories, they responded with a blanket opposition that claimed that this court's previous ruling obviated any need for a response. They also "assert[ed] [their] Fifth Amendment Privilege to all questions." R. 30, Pg. ID 166–67. So the government tried to depose them. But again they "ple[d] the Fifth" to almost every question that the government posed, including not only questions about how they got the money and whether they owned it, but also questions about whether they were even at the airport in the first place. R. 35-1, Pg. ID 220–21; R. 35-2, Pg. ID 246–47.

Having achieved little in discovery, the government moved for summary judgment. The district court found that Wiggins and Allison had abused the discovery process by using the Fifth Amendment as a sword rather than a shield. *See United States v. Certain Real Prop. 566 Hendrickson Blvd.*, 986 F.2d 990, 996 (6th Cir. 1993) (quoting *United States v. Rylander*, 460 U.S. 752, 758 (1983)). So the district court struck Wiggins's and Allison's ownership statements from their verified claims. Once the district court removed these statements, all Wiggins and Allison had left was the bare fact that they possessed the cash when the government seized it. But the district court found that mere possession (as opposed to ownership) did not give Wiggins and Allison a concrete interest in the property, so they did not have standing to contest the forfeiture. Thus, the district court granted summary judgment to the government.

Wiggins and Allison now appeal. We review whether the district court appropriately struck their verified claims for an abuse of discretion. *$31,000.00*, 872 F.3d at 347 (citing *United States v. One 2011 Porsche Panamera*, 684 F. App'x 501, 506 (6th Cir. 2017)). We review de novo whether Wiggins and Allison ultimately had standing to contest the forfeiture. *Id.* (citing *United States v. Real Prop. Located at 4527–4535 Mich. Avenue*, 489 F. App'x 855, 857 (6th Cir. 2012)).

II.

Wiggins and Allison cannot contest the forfeiture unless they have standing. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). Standing is one necessary ingredient in "Cases" or "Controversies"—the only things federal courts have the power to resolve. U.S. Const. art. III, § 2. To satisfy standing in a civil forfeiture action, a party challenging the forfeiture must have an interest in the contested property such that "he would be injured if the property were forfeited to the United States." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008). A verified claim alleging ownership usually demonstrates

that interest. *$31,000.00*, 872 F.3d at 351. A mere possessory interest in the property, by contrast, requires additional "explanatory evidence." *$148,840.00*, 521 F.3d at 1273, 1275; *accord $515,060.42*, 152 F.3d at 497–98. After all, if a person possessed property illegally, he would suffer no injury if the government took that property; he had no legal interest in the property to begin with. Thus, the amount of evidence that Wiggins and Allison needed to demonstrate standing depends on this distinction between ownership and possession. *$148,840.00*, 521 F.3d at 1274.

Although Wiggins and Allison submitted verified claims asserting ownership, the district court struck those claims. It did so after finding that the two had abused the discovery process. Wiggins and Allison contend that they were merely exercising their Fifth Amendment rights and should not be punished for doing so. The Fifth Amendment protects a person from "be[ing] compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. During discovery, Wiggins and Allison invoked this protection in response to nearly every question the government posed. But invoking the Fifth Amendment "does not decrease [a claimant's] burden of establishing standing at the summary judgment stage." *$148,840.00*, 521 F.3d at 1273–74; *see also Certain Real Prop. 566 Hendrickson Blvd.*, 986 F.2d at 996 ("[A] blanket assertion of the [Fifth Amendment] privilege is no defense to a forfeiture proceeding, . . . nor does it excuse the claimant's [summary judgment] burden."). Rather, when a person challenges a forfeiture and invokes the Fifth Amendment during discovery, he must bear the consequences of his silence. *$148,840.00*, 521 F.3d at 1273–74.

Those consequences can prove fatal when the challenger abuses his Fifth Amendment privileges. The Fifth Amendment operates as a shield against compulsory self-incrimination, not a sword used to make one's assertions of ownership impervious to attack. *Id.* at 1277. But Wiggins

and Allison wielded the Fifth Amendment offensively. They refused to answer even basic inquiries—for instance, whether they were at the airport on the day the government seized the money. Although parties can invoke the Fifth Amendment against questions that would incriminate them—even questions about the contested property's origins—they run the risk of having their claim struck if they blanketly assert the privilege as a stonewalling tactic. *Rylander*, 460 U.S. at 758; *accord $148,840.00*, 521 F.3d at 1277. Because Wiggins and Allison misused their Fifth Amendment privileges by refusing to answer even non-incriminating questions, the district court did not abuse its discretion when it struck their verified claims. *See $148,840.00*, 521 F.3d at 1277 ("[A] district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause."); *accord United States v. $110,873.00*, 159 F. App'x 649, 653 (6th Cir. 2005) (noting that remaining silent is "a perfectly constitutional option" but not one that can be "leverage[d] into a basis for avoiding the requirements of" discovery); *United States v. Parcels of Land*, 903 F.2d 36, 42–44 (1st Cir. 1990) (upholding district court's power to strike affidavit when claimant invoked Fifth Amendment at deposition).

Once the district court struck Wiggins's and Allison's ownership claims, the only evidence they had was a single, bare assertion that they were "in exclusive possession of these monies." R. 6, Pg. ID 29; R. 7, Pg. ID 33. But possession alone does not establish a sufficient interest in property to contest its forfeiture. *$515,060.42*, 152 F.3d at 498. Wiggins and Allison needed to provide at least "some explanation or contextual information regarding [their] relationship to the seized" money beyond possession. *Id.* Instead, they remained silent. Had the district court not struck Wiggins's and Allison's verified claims, their silence would have made this a closer case; a verified claim of ownership almost always provides standing at summary judgment. *See, e.g.*,

*$148,840.00*, 521 F.3d at 1277. But unlike ownership, a possessory interest requires more, and Wiggins's and Allison's silence left the record devoid of any other evidence that would demonstrate standing to contest the forfeiture.[1]

Wiggins and Allison suggest that this court's prior holding that they had standing serves as law-of-the-case and is thus "impervious to assailments." Appellant Br. at 5; *see also $31,000.00*, 872 F.3d at 351. "Impervious" or not, that holding does not control the current dispute. The law-of-the-case doctrine "provides that courts' earlier decisions 'should continue to govern the same issues in subsequent stages in the same case.'" *In re Blasingame*, 920 F.3d 384, 392 (6th Cir. 2019) (quoting *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016)). True enough, this court decided that Wiggins and Allison had standing—*at the motion-to-dismiss stage*. *$31,000.00*, 872 F.3d at 351. But this court never held that Wiggins and Allison also have standing *at summary judgment*. *See id.* at 352 n.3. After all, challengers like Wiggins and Allison must demonstrate standing for each stage of litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *$148,840.00*, 521 F.3d at 1273. So the law-of-the-case doctrine does not apply.

We affirm.

---

[1] Wiggins and Allison also argue that the DEA agents initially seized the money without any probable cause, thus violating the Fourth Amendment. *See* U.S. Const. amend. IV. Even if this argument is correct, Wiggins and Allison are not the proper parties to advance it. Because Wiggins and Allison lack standing, we do not consider their underlying claims about the propriety of the initial seizure. *United States v. $677,660.00 in U.S. Currency*, 513 F. App'x 531, 533 (6th Cir. 2013) (per curiam).